Katy Shuk Chi Lau MESSIER,
Appellant

v.

Luc J. MESSIER, Appellee.

No. 14–11–00369–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 28, 2012.

Jacqueline Renea Mixon Bertrand, Houston, for appellant.

Donn C. Fullenweider, Todd Maas Frankfort, Houston, for appellee.

Panel consists of Justices BOYCE, CHRISTOPHER, and JAMISON.

## MAJORITY OPINION

MARTHA HILL JAMISON, Justice.

Katy Shuk Chi Lau Messier appeals from the trial court's final decree of divorce, dissolving her marriage to appellee Luc J. Messier. In three issues, Katy challenges the trial court's grant of permanent injunctions primarily concerning international travel with the children of the marriage. We modify the trial court's final decree and, as so modified, we affirm.

### Background

Luc and Katy were married in 1998 and have two minor children. Luc is from Canada and Katy is from Hong Kong. Neither is a United States citizen, but the family has lived in Houston for several years. In 2009, Luc filed for divorce and Katy filed a counter-petition. At trial, both sought to be named sole managing conservator of the children. In his First Amended Petition, his live petition at the

time of trial, Luc additionally requested "the Court to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Luc also prayed for "general relief."

During trial before a jury, evidence was presented regarding erratic behavior by Katy, including threats to commit suicide and harm the children if Luc did not permit her to move back to Hong Kong with them, her dissatisfaction with life in the United States and Houston in particular, allegations she made to one of the children about Luc, and a threat to accuse Luc of rape while they were in Hong Kong so that he would be arrested. Additional, substantial evidence was presented regarding Katy's desire to return to Hong Kong to live with her children. Much of this evidence was in the form of testimony by Luc, but it also included testimony by mental health professionals, audio and video recordings, and documentary evidence. Luc in particular expressed considerable concern that Katy would leave the country with the children.

At the conclusion of a trial before a jury, the jury named Luc sole managing conservator of the children.[1] The trial judge also made determinations regarding the division of marital assets as well as possession of and access to the children. In this appeal, Katy only challenges the trial court's imposition of certain requirements of and restrictions on Katy. As numbered by Katy, the court enjoined her from (1) removing the children from the State of Texas or the United States without Luc's written consent, (2) applying on behalf of the children for new or replacement passports or international travel visas, (3) interfering with Luc's possession of the children, (4) hiding or secreting the children from Luc, and (5) discussing the case or any matter related thereto with the children or in their presence.[2] The court further ordered Katy to (1) surrender any passports she may have for the children, (2) provide to the United States State Department and the consulate or embassy of "Hong Kong and the People's Republic of China" written notice of the order's travel and passport restrictions, (3) provide to those entities a copy of the court's order, (4) provide to those entities proof of Katy's agreement to the order's restrictions, and (5) provide to the trial court proof of receipt for items 2 through 4.

Certain of this relief appears modeled after the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code, which are to be considered by the trial court upon a finding of a potential risk of international abduction under sections 153.501 and 153.502. Tex. Fam.Code §§ 153.501–503. However, in its "Rendition and Verdict," the trial court stated,

> Based upon careful consideration after the mandatory review of the factors set out in Texas Family Code Section 153.502 as a prerequisite to such determination, the court is unable to find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent. The court has included in the decree provisions found to be in the best interest of the children that the court

---

1. Although not relevant to this appeal, the jury also found no cruel treatment by Luc as Katy had alleged as grounds for divorce. Additionally, the jury rejected a tort claim by Katy for abuse of process. Katy had alleged that Luc abused the legal process by having her committed to a mental health facility against her will.

2. Although there may be several ways to parse the court's orders, we adopt Katy's divisions for ease of reference.

believes are within the discretion of the court and are not dependent on a finding contemplated by Family Code Section 153.501.

Furthermore, the court stated as follows in its findings of fact:

The court, having reviewed Texas Family Code § 153.502, does not find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent, as required by § 153.502; however, the court does find that certain injunctions and conditions regarding international travel are in the best interest of the children, as set forth in the Final Decree of Divorce.

In its conclusions of law, the court then listed the same injunctions as discussed above.

In three issues, Katy specifically contends that the trial court erred in entering the injunctions because (1) Luc did not plead for such injunctive relief, (2) the evidence was insufficient to support the injunctions, and (3) the court's order failed to comply with the requirements for issuing a permanent injunction. We will discuss each issue in turn.

### Sufficiency of the Pleadings

In her first issue, Katy contends the trial court erred in entering certain of the injunctions against her because no pleadings supported that relief. As stated above, in his live petition at the time of trial, Luc requested "the Court to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Luc further

prayed for "general relief." Katy specifically argues that Luc's pleadings were insufficient to support the injunctions the court entered related to international travel.

■ Texas Rule of Civil Procedure 301 requires that a judgment "conform to the pleadings" filed in the case. Tex.R. Civ. P. 301. In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance. *E.g., Cain v. Cain,* No. 14–07–00114–CV, 2007 WL 4200638, at *4 (Tex.App.-Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.) (holding that determining the best interest of the child should not be hampered by "narrow technical rulings"); *Halla v. Halla,* No. 14–06–01126–CV, 2007 WL 2367600, at *2 (Tex. App.-Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op.) (explaining that, in child custody and support cases, "detailed pleadings are not required"); *Peck v. Peck,* 172 S.W.3d 26, 35 (Tex.App.-Dallas 2005, pet. denied) (holding a trial court has discretion to place conditions, including a permanent injunction, on parental visitation even if the pleadings do not request such conditions); *see also Sanchez v. Sanchez,* No. 04–06–00469–CV, 2007 WL 1888343, at *5 (Tex.App.-San Antonio July 3, 2007, pet. denied) (holding that "the prayer for general relief, the allegations and requests within the petition, and the evidence presented authorized the trial court to order the permanent injunction"). Pleadings must at a minimum notify the opposing party of the claim involved. *Halla,* 2007 WL 2367600, at *2 (citing Tex.R. Civ. P. 47(a)).[3]

---

**3.** In arguing that a trial court may not grant permanent injunctions in a divorce context if not specifically pleaded for, Katy relies upon cases not involving children. *See Falor v. Falor,* 840 S.W.2d 683, 687 (Tex.App.-San

Antonio 1992, no writ); *Ulmer v. Ulmer,* 717 S.W.2d 665, 666–67 (Tex.App.-Texarkana 1986, no writ); *Morgan v. Morgan,* 657 S.W.2d 484, 493–94 (Tex.App.-Houston [1st

■ Here, Luc's live pleadings raised the issue of international travel with the children by Katy, going so far as to allege a risk of international abduction. Moreover, Luc requested general relief and that the court "take such measures as are necessary to ·protect the children," a clear request for nonmonetary relief and an apparent reference to the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code, which specifically references injunctive relief, among other options. Under the circumstances of this child custody case, we find that Luc's pleadings sufficiently supported the injunctive relief.[4]

### Permanent Injunction Requirements

■ In her third issue, Katy contends that the trial court abused its discretion in granting injunctive relief in the final decree when Luc failed to plead or prove the traditional requirements for permanent injunctions: (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the lack of an adequate remedy at law.[5] *See generally Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). However, as this court and other courts have explained, these traditional requirements are not strictly applicable in the child custody context; rather, courts routinely grant permanent injunctions in such cases consistent with the best interests of the children. *See, e.g., In re B.J.W.S.*, No. 14–08–01154–CV, 2010 WL 4396291, at *9

(Tex.App.-Houston [14th Dist.] Nov. 4, 2010, no pet.); *see also Peck*, 172 S.W.3d at 35 (finding no abuse of discretion in granting a permanent injunction in custody case where traditional requirements were not met). We will address the injunctions and the evidence as they pertain to the best interests of the children in the next section of the opinion. We overrule Katy's third issue in its entirety as well as her second issue to the extent it is based on strict application of these traditional requirements.

### Abuse of Discretion

■ In her second issue, Katy generally contends that the trial court abused its discretion in granting certain permanent injunctions because the evidence does not support granting those in junctions.[6] We review a grant of a permanent injunction under an abuse of discretion standard. *Arredondo v. Betancourt*, No. 14–11–00742–CV, 2012 WL 4829801, at *8 (Tex. App.-Houston [14th Dist.] Oct. 11, 2012, no pet. h.). A trial court has broad discretion in determining the best interest of a child in family law matters. *E.g., In re Doe 2*, 19 S.W.3d 278, 281 (Tex.2000). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam.Code § 153.002. The trial court is typically in the best position to observe the demeanor and personalities of the witnesses and to understand influences on the

Dist.] 1983, writ dism'd). These cases are therefore readily distinguishable.

4. At no point in her briefing does Katy specifically argue that the trial court's prohibitions on her discussing the case around the children, interfering with Luc's possession, or hiding or secreting the children were not supported by the pleadings or otherwise tried by consent. *See generally* Tex.R. Civ. P. 67.

5. To some extent, Katy also raised this argument in her second issue.

6. Katy also argues in her second issue that, alternatively, the evidence was factually insufficient to support the imposition of the injunctions. However, when the best interests of the child are at issue, as here, sufficiency of the evidence is not the correct standard for review. *Peck*, 172 S.W.3d at 36.

family dynamic that cannot be discerned by mere reference to the record. *See In re N.A.S.,* 100 S.W.3d 670, 673 (Tex.App.-Dallas 2003, no pet.).

An abuse of discretion occurs when a court acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Iliff v. Iliff,* 339 S.W.3d 74, 78 (Tex.2011). A trial court also abuses its discretion if it fails to apply the law correctly. *Id.* An abuse of discretion does not occur if some evidence of a substantive and probative character exists to support the trial court's decision and that decision constitutes a correct application of the law. *See Arredondo,* 383 S.W.3d at 740–41. Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are relevant factors in assessing whether a trial court abused its discretion. *In re Davis,* 30 S.W.3d 609, 614 (Tex.App.-Texarkana 2000, no pet.). We must consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Arredondo,* 383 S.W.3d at 740–41.

Katy argues generally that there was no evidence to support the injunctions.[7] She further asserts that there was no evidence of any imminent harm, she had abducted or threatened to abduct the children, she had ever interfered with Luc's possession of the children, or she had ever hidden the children from him. She maintains that the evidence indicates she always returned the children to Luc after her visitation periods were over, and she says that there was "only scant testimony" that she had spoken negatively to the children about Luc or the case.

The majority of Katy's arguments appear focused on discounting evidence regarding a risk of international abduction. As discussed above, the trial court specifically stated in its findings of fact that it did not "find that credible evidence has been presented indicating a potential risk of . . . international abduction."[8] However, the court went on to find that "certain injunctions and conditions regarding international travel are in the best interest of the children." In other words, the court clearly indicated that while there was insufficient evidence of a potential risk of international *abduction* by Katy, it was in the children's best interest for Luc to be in control of any international *travel* by the children. Evidence supporting this determination can be found in Luc's testimony, the statements of mental health professionals who treated or evaluated Katy, and in audio records made of Katy at various times. This evidence could be interpreted as revealing Katy's irrational and threatening behavior and anger issues. It was undisputed at trial that Katy wanted to return to Hong Kong with the children. Luc testified regarding several troubling incidents, including once when Katy allegedly killed the family's pet bird. Luc also testified that it had been difficult to reach

---

7. It is important to note that Katy does not offer any specific argument that the trial court lacked authority to impose these injunctions, assuming there was evidence to support the trial court's actions. *See generally Peck,* 172 S.W.3d at 35 (rejecting substantive challenge to trial court's authority to issue particular permanent injunction in child custody case). Katy's contentions under her second issue are limited to challenging the evidentiary support for the court's rulings.

8. Similarly, the majority of Luc's arguments in his appellee's brief also focus on the risk of international abduction; however, Luc has not appealed the trial court's finding of fact that no credible evidence has been presented indicating a potential risk of international abduction.

agreement with Katy on issues relating to the children. One psychiatrist described Katy as self-centered, narcissistic, and manipulative, and another psychiatrist used similar terms. In comparison, a psychologist who assessed Luc found him to be without personality disorder, mature, stable, fair-minded, calm, and responsible, with good boundaries, good knowledge of child development, and good management skills with the children.

■ Given this evidence, it would have been reasonable for the trial court to conclude that, quite apart from any risk of international abduction, it was in the best interest of the children to limit Katy's control over international travel with the children. A trial court may grant, deny, restrict, or limit any of a possessory conservator's rights, privileges, duties, and responsibilities with respect to the child as is necessary to protect the child's best interest. *See* Tex. Fam.Code § 153.072; *Elshafie v. Elshafie*, No. 13–10–00393–CV, 2011 WL 5843674, at \*3 (Tex.App.-Corpus Christi Nov.22, 2011, no pet.) (citing *Hopkins v. Hopkins*, 853 S.W.2d 134, 137 (Tex. App.-Corpus Christi 1993, no writ)). The evidence presented at trial supports the conclusion that prohibiting Katy from taking the children outside the United States or Texas without Luc's consent and prohibiting her from retaining or obtaining passports for the children appear to be reasonable restrictions of Katy's rights as a possessory conservator and in the best interest of the children.

■ But not all of the injunctions which the trial court imposed appear rationally related to Luc's control of international travel by the children. Neither do they appear to be reasonable restrictions on the possessory conservator's rights with respect to the children absent a finding of a potential risk of international abduction. The requirements that Katy provide to the State Department, as well as a foreign embassy or consulate, notice of the court-ordered travel restrictions, a copy of the decree, and proof of her agreement to the restrictions,[9] as well as provide proof of receipt of each of these items back to the court, mirrors the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code. They are designed to prevent international abduction, *i.e.*, a failure to return the children from overseas. They go beyond merely providing Luc with control over the children's international travel by involving both the United States and a foreign government. *Cf. Arredondo*, 383 S.W.3d at 743–45 (dissolving travel restriction on mother's personal travel without children because it was overly broad, unreasonably restrictive, and unrelated to the child's best interest). In this regard, the trial court imposed upon Katy a greater burden than the law allows. *Cf. In Re Cooper*, 333 S.W.3d 656, 661 (Tex.App.-Dallas 2009, no pet.) (holding trial court abused its discretion in requiring mother to make "extreme efforts" to find employment within the preferred residency area). The trial court abused its discretion in granting these injunctions absent a finding of a potential risk of international abduction; there was no evidence in this case supporting these measures as being in the children's best interest outside of a risk of international abduction.[10] Con-

9. Luc does not point to any evidence in the record, and we have not found any, suggesting that Katy agreed to the travel restrictions.

10. Courts frequently consider the following general factors in assessing the best interests of a child when they are applicable: (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present or future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the

sequently, we sustain Katy's second issue in part and modify the trial court's final decree to dissolve these requirements.

■ The trial court's orders that Katy cannot interfere with Luc's right of possession or hide or secrete the children from him, however, do not appear solely connected to a risk of international abduction. As Katy argues, Luc cites no evidence suggesting Katy has interfered with his possession or hidden the children from him in the past. However, as discussed above, there was considerable evidence that Katy was prone to erratic behavior and manipulation. This evidence was sufficient to support the trial court's orders on interference, hiding, and secreting; thus, the trial court did not abuse its discretion in issuing these orders. *See generally* Tex. Fam. Code § 153.072; *Elshafie,* 2011 WL 5843674, at *3.

■ Evidence was also presented to support the injunction barring Katy from discussing the custody case or related issues around the children. For example, a psychologist testified that certain comments attributed to Katy were those of "a parent who doesn't want to co-parent and a parent who wants to have the other parent look bad to the child." Katy acknowledges this evidence, although she refers to it as "scant testimony." Documentary evidence further indicated that Katy told one of the children that Luc had done "harmful things" to her and would not allow her to contact the child anymore. This evidence was sufficient to support the court's injunction to prevent discussion of the case around the children. As mentioned, Katy does not raise any substantive

legal arguments regarding any of these injunctions.

*Conclusion*

We sustain Katy's second issue in part. We modify the trial court's final decree to dissolve the requirements that Katy inform the State Department and a foreign consulate or embassy of the travel restrictions contained in the final decree and provide those institutions with a copy of the decree, as well as the requirement that she provide proof of receipt back to the trial court. As so modified, we affirm the final decree.

CHRISTOPHER, J., concurring.

TRACY CHRISTOPHER, Justice, concurring.

I join in the court's opinion addressing Katy Messier's second and third issues. Although I also agree that the parties' requests for injunctive relief were properly before the trial court, I would overrule Katy's first issue for different reasons than those stated by the majority. I instead would hold that most of the challenged injunctions that prohibit Katy from taking some action were placed at issue by Katy's live pleadings, and the propriety of the remaining injunctions, most of which require Katy to take some action, was tried by consent.

**A. Matters Raised by Katy's Counterpetition**

About two months after the agreed temporary orders were signed in December 2009, Katy Messier filed her second amended counterpetition, in which she

child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976); *Cooper,* 333 S.W.3d at 660. None of these factors support the trial court's measures relating to the State Department or a foreign embassy or consulate in this case.

"pray[ed] that the Court make all temporary injunctions permanent." For nearly every injunction that is included in the final decree of divorce and that prohibits Katy from taking some action, there is a parallel temporary order or injunction. I would hold that by asking the trial court to make this temporary relief permanent, Katy placed these issues before the trial court.[1]

#### 1. Hiding or secreting the children

In the agreed temporary orders, Katy was enjoined from "hiding or secreting the children from the other party." The "other party" is Luc. In the final decree of divorce, Katy is enjoined from the identical conduct: "hiding or secreting the children from Luc J. Messier."

#### 2. Discussing the litigation in the children's hearing

Under the agreed temporary orders, Katy was enjoined from "discussing the pending litigation or any manner related thereto with the children or in the presence of the children." In the final decree of divorce, she is enjoined from "discussing this litigation or any matter related thereto with the children or in the presence of the children." The language in the final decree of divorce has been changed from that of the agreed temporary orders only to reflect that the divorce litigation may no longer be "pending."

#### 3. Unapproved travel

In the agreed temporary orders, it was ordered that Katy "shall not travel with [the children] outside the United States, without written approval of the other parent." It additionally was ordered that Katy "shall not travel with the children outside of Texas without approval from the other parent and after providing a detailed

itinerary to the other parent." In the final decree of divorce, Katy is enjoined from "removing the children from the State of Texas or the United States without the specific written permission of Luc Messier."

The differences between the prohibitions of the two documents are limited to matters of form. Under the terms of the agreed temporary orders, Katy was required to obtain Luc's approval before traveling with the children between states or between nations, but the form in which such approval had to be given was specified only for the latter. In the final decree of divorce, approval was required in the same form—writing—for both interstate or international travel. Although the relief granted in one document was phrased as an "order" and in the other as an "injunction," the substance of each ruling is the same. See *Peck v. Peck*, 172 S.W.3d 26, 36 (Tex.App.-Dallas 2005, pet. denied) ("[W]hether the trial court entered an injunction ... or a simple order that made the same prohibition within the divorce decree appears to be a distinction without a difference.") I therefore would conclude that Katy's pleading asking for this temporary injunction to be made permanent placed this issue before the trial court.

#### 4. Applying for or renewing passports or visas

In the agreed temporary orders, Katy was enjoined from "applying for and or renewing any passport belonging to [either child]"; in the final decree of divorce, she was enjoined from "applying on behalf of the children for new or replacement passports or international travel visas." "A passport is a document identifying a citizen, in effect requesting foreign powers to

---

1. In comparing the content of the two documents, I have standardized the capitalization and punctuation.

allow the bearer to enter and to pass freely and safely, recognizing the right of the bearer to the protection and good offices of [the issuing country's] diplomatic and consular officers." *United States v. Laub*, 385 U.S. 475, 481, 87 S.Ct. 574, 578, 17 L.Ed.2d 526 (1967). A visa is "issued by the government of the country in which the holder of the passport desires to travel" and recognizes "the validity of a passport." *United States v. Rodriguez*, 182 F.Supp. 479, 484 (S.D.Cal.1960) *aff'd in part, rev'd in part on other grounds sub nom. Rocha v. United States*, 288 F.2d 545 (9th Cir.1961). Because both documents often are needed for international travel, I would hold that the portion of the final decree of divorce permanently enjoining Katy from renewing or applying for such documents on the children's behalf did not impermissibly exceed the scope of matters raised by Katy's pleading.

### 5. *Removing the children beyond Harris County, Texas*

In the agreed temporary orders, Katy was enjoined from "removing the children beyond Harris County, Texas, acting directly or in concert with others unless specifically authorized herein." In the final decree of divorce, Katy is enjoined from "interfering in any way with Luc J. Messier's possession of the children or taking or retaining possession of the children, directly or in concert with other persons, except as permitted by order of the Court."

Here, the conduct prohibited by the permanent injunction is broader than that prohibited by the agreed temporary orders. "Removing the children beyond Harris County" without authorization is just one way in which Katy could interfere with Luc's possession of the children. I would hold that this particular means of interfering with Luc's possession was raised by Katy's pleading, and the ques-

tion of whether the trial court should enjoin Katy from using other means to interfere with Luc's possession of the children was tried by consent as discussed below.

### B. Matters Tried by Consent

In Luc's live pleadings at the time of trial, he asked the trial court "to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Although Luc did not cite the specific statute in his petition, this is a request for the trial court to make a determination under Texas Family Code section 153.501. This statute, entitled "Necessity of Measures to Prevent International Parental Child Abduction," provides in pertinent part as follows:

> In a suit, if credible evidence is presented to the court indicating a potential risk of the international abduction of a child by a parent of the child, the court, on its own motion or at the request of a party to the suit, shall determine under this section whether it is necessary for the court to take one or more of the measures described by Section 153.503 to protect the child from the risk of abduction by the parent.

TEX. FAM.CODE ANN. § 153.501(a) (West 2008). The measures to protect the child from the risk of abduction may include the following:

- prohibiting the parent and anyone acting on the parent's behalf from removing the child from Texas or the United States;
- requiring the parent to surrender any passport issued in the child's name, including a passport issued in the name of both the parent and the child;
- prohibiting the parent from applying for a new or replacement passport or international travel visa for the child;

- requiring the parent to provide written notice of the child's passport and travel restrictions to the U.S. Department of State's Office of Children's Issues and the relevant foreign consulate or embassy;
- requiring the parent to provide these same governmental offices with an authenticated copy of the court order detailing the restrictions and documentation of the parent's agreement to the restrictions;
- requiring the parent to provide proof to the court that these governmental offices received such written notices;
- including in the court's order a provision identifying the United States as the child's country of habitual residence; and
- including a statement that a party who violates the order may be subject to civil or criminal penalties or both.[2]

*Id.* § 153.503(4), (5), (8)(A), (8)(C).

In a proper case, a trial court could impose restrictions such as those described above even in the absence of pleadings or a motion requesting such relief. *See id.* § 153.501 ("[I]f credible evidence is presented ..., the court, on its own motion ... *shall determine* under this section whether it is necessary for the court to take one or more of the measures described ....") (emphasis added); *see also* TEX.R. CIV. P. 301 (providing that the court's judgment must conform to the pleadings and "the nature of the case

proved," and award the prevailing party "all the relief to which he may be entitled either in law or equity"). Here, however, the trial court specifically stated in its written rendition that "the court is unable to find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent."

In general, a trial court must not grant injunctive relief that is not prayed for. *Holubec v. Brandenberger,* 111 S.W.3d 32, 39 (Tex.2003). Under the Texas Rules of Civil Procedure, pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex.1995). A reviewing court should liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon,* 278 S.W.3d 874, 878 (Tex.App.-Houston [14th Dist.] 2009, no pet.). The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer that the petition contains a given claim, then the court must conclude the petition does not contain such a claim, even under a liberal construction.

---

**2.** One such criminal penalty would be conviction of the offense of interference with child custody. *See* TEX. PENAL CODE ANN. § 25.03 (West Supp.2012). That statute provides in relevant part as follows:

(a) A person commits an offense if the person takes or retains a child younger than 18 years of age:

(1) when the person knows that the person's taking or retention violates the express terms of a judgment or order, including a

temporary order, of a court disposing of the child's custody;

...

(3) outside of the United States with the intent to deprive a person entitled to possession of or access to the child of that possession or access and without the permission of that person.

*Id.* In the final decree of divorce, Katy was permanently enjoined from interfering with Luc's possession of the children.

*See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55; *Baltzer v. Medina,* 240 S.W.3d 469, 476 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (reversing trial court's appointment of father as sole managing conservator where such relief was neither requested nor tried by consent).

On the other hand, if issues not raised by the pleadings are tried by express or implied consent of the parties, these issues will be treated as if they had been raised by the pleadings. TEX.R. CIV. P. 67; *Baltzer,* 240 S.W.3d at 476. Based on my review of this record, I would hold that Katy's counsel consented to the trial court's determination of appropriate permanent injunctive relief.

On the first day of trial, even before voir dire, the trial court and parties' attorneys discussed Luc's proposed jury charge concerning international kidnapping. Luc's counsel argued that the trial court should ask the jury to determine whether there is a risk of international abduction of a child by a parent of the child. Katy's counsel argued,

> When you get into rights and duties and injunctions and restraints and so on and so forth, ... those are Judge functions and not jury functions.... At most this is subsumed in the questions of the jury deciding whether to appoint him or her as sole managing conservator. It is also subsumed in the consideration of whether or not to restrict domicile or geographic location.

The trial court sustained the objection to the submission of a jury question concerning the risk of international abduction. Thus, even before any evidence was heard,

Katy's counsel took the position that if the jury found that Luc should be appointed sole managing conservator, then the trial court would determine whether injunctions and restraints, if any, were appropriate.[3] The trial court agreed, and the jury did find that Luc should be appointed sole managing conservator. As expected, the trial court then addressed the questions of what findings should be made and what injunctive relief, if any, should be included in the judgment. I would hold that the injunction issue was tried by consent.

In all other respects, I agree with the majority's analysis.

---

**3.** The jury was asked to determine whether the children's residence should be restricted to a specific geographic location only if it first found that (1) both parents should be appointed joint managing conservators, and (2) one parent should have the exclusive right to des-ignate the children's primary residence. Because the jury found that Luc should be appointed sole managing conservator, it did not reach the question of whether the geographic location of the children's primary residence should be restricted.